HENRY C. BRANSTETTER *vs.* WILLIAM H. MORGAN.

Opinion filed May 31st, 1893.

**Evidence to Refute Inference or Presumption of Fact.**

> A plaintiff may properly introduce evidence to refute an inference or presumption of fact that might arise from matters drawn from himself on cross-examination, even though such evidence has no direct bearing upon the issues, and the time of the introduction of such evidence is peculiarly within the discretion of the trial court.

**Claim and Delivery—Ownership—Verdict.**

> In claim and delivery, where each party claims the right of possession by virtue of absolute ownership, and in no other manner, a verdict which finds the plaintiff entitled to the possession of the property, and fixes its value, will support a judgment for plaintiff for possession of the property, or its value as found by the jury.

Appeal from District Court, Barnes County; *Rose*, J.

Action by Henry C. Branstetter against William H. Morgan for the recovery of six horses. Plaintiff had judgment, and defendant appeals.

Affirmed.

*M. A. Hildreth*, for appellant.

*G. K. Andrus*, for respondent.

BARTHOLOMEW, C. J. The judgment in favor of the plaintiff in this case must be affirmed. There was practically no defense to the action. The case was claim and delivery for six horses. Both parties claimed by absolute ownership. Plaintiff's evidence showed that he raised the horses on his ranch in Umatilla County, Or.; that they were branded when young colts with a Y brand on the left shoulder; that these horses, with 25 or 30 more, were

stolen from his ranch about August 5th, 1891, and that they were shipped east over the Northern Pacific Railroad by a party by the name of C. McCullom. Plaintiff positively identified the horses, both by the brand and by general appearance. The branding iron with which these horses were branded, and which plaintiff swore he had used for more than 12 years, was put in evidence, over defendant's objection. It might have been of assistance in identifying the horses, and was thus material. Plaintiff's neighbors who had assisted him in branding swore positively to the branding iron, and to plaintiff's loss of horses, but these witnesses were not permitted to see the horses in controversy, they being still in defendant's possession. Defendant's claim of title rested exclusively upon the fact that he purchased the horses in August, 1891, from one Charles McCullom, at Tower City, in this state, and paid full value therefor. This was consistent with and corroborative of plaintiff's evidence. No effort whatever was made by defendant to show that McCullom had any title to the horses. But it was sought on cross-examination of plaintiff to draw out matter on which to base an argument to the jury that plaintiff and McCullom were in collusion, because plaintiff had not taken active measures to apprehend and punish McCullom. In rebuttal of this idea, plaintiff was permitted to introduce, over defendant's objection, a subscription paper signed by thirty citizens of Oregon, and to which plaintiff was its largest subscriber, which was gotten up to raise funds to capture and convict parties implicated in stealing horses, and which paper stated that "H. C. Branstetter is a heavy loser." Plaintiff was also allowed, over objection, to show, by the district attorney of Barnes County, that he applied to that officer to prosecute said McCullom, and by a justice of the peace that a warrant was issued for said McCullom, and by the deputy sheriff that said warrant was placed in his hands, and he went to New Rockford to arrest said McCullom, but did not find him. This was all proper to rebut the claim that plaintiff was in collusion with McCullom, and was properly admitted. See *State* y. *McGahey*, 55 N. W. Rep. 753, 3 N. D. (decided at

this term,) and cases there cited. The order in which the proof was offered might be open to criticism, but that matter is peculiarly in the discretion of the trial court. The verdict finds the plaintiff entitled to the possession of the property, and the value thereof. It is urged that this is entirely insufficient to support the judgment for plaintiff, in that it does not pass upon the question of ownership. Some early Wisconsin cases are cited to support the claim. These cases for the most part were decided when the practice in replevin cases was *quasi* criminal, and the plea of "not guilty" put in by defendant put in issue every material allegation in the complaint. Ownership, both general and special, was thus put in issue; also the right of possesion, as well as the wrongful taking or wrongful detention. It is elementary that the verdict must respond to all the issues; and this is the same whether the issues are raised by plea of "not guilty" or specifically by answer. But in this case there was, under the pleadings, but the one issue. Each party claimed absolute ownership. Neither claimed any right, except such as flow from and are incident to such ownership. Under the pleadings, ownership necessarily carried with it the right of possession, and the party entitled to possession was necessarily the owner. The verdict settled the only issue in the case, and was sufficient. *Krause* v. *Cutting*, 32 Wis. 688; *Everit* v. *Bank*, 13 Wis. 468; *Faulkner* v. *Meyers*, 6 Neb. 415; *Underwood* v. *White*, 45 Ill. 438; *Clark* v. *Heck*, 17 Ind. 281; *Payne* v. *June*, 92 Ind. 253.

Judgment affirmed. All concur.